IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| PETEFISH, SKILES & CO., an Illinois Banking Association, <br><br> Interpleader-Plaintiff, <br><br> vs. <br><br> MEADS-MAES USA CHIREN JOINT VENTURE COMPANY and UGS DRILLING CHIREN DZZD, <br><br> Interpleader Defendants. | Case No. 24-cv-3250 |

## COMPLAINT FOR INTERPLEADER

Interpleader-Plaintiff, PETEFISH, SKILES & CO., an Illinois Banking Association ("Petefish"), through its attorneys, BROWN, HAY & STEPHENS, LLP, brings this action for interpleader against MEADS-MAES USA CHIREN JOINT VENTURE COMPANY ("Meads-Maes") and UGS DRILLING CHIREN DZZD ("UGS") (collectively "Defendants"), stating:

### INTRODUCTION

1.     Petefish is holding $7,000,000 in escrow for one of the two Defendants, though it cannot tell which one. The Defendants are not getting along—they are fighting over a Bulgarian natural gas construction project, and the escrowed funds are part of an Advance Payment Bank Guarantee[1] issued by Petefish in relation to said project. UGS has demanded payment; Meads-Maes says UGS has acted in bad faith and thus is not entitled to payment.

2.     Ultimately someone is entitled to the escrowed money. Since Petefish cannot tell

---

[1] An advance payment guarantee is a "promise by a financial institution to meet the liabilities of a business or individual if they don't fulfill their obligations in a contractual transaction." Mitchell Grant, *What Is a Bank Guarantee? How They Work, Types, and Example*, Investopedia, https://www.investopedia.com/terms/b/bankguarantee.asp (Feb. 23, 2024). They are "mostly seen in international business transactions," and are "similar to American standby letters of credit." *Id.*

who, it needs this Court's assistance. Petefish will make the check out to either Defendant; it just needs the Court's direction in determining who the check should be made out to. Hence this interpleader action.

## PARTIES

3. Petefish is an Illinois banking association with its principal place of business located at 102 West Beardstown Street, Virginia, IL 62691.

4. On information and belief, Meads-Maes is a company created and validly existing under the laws of Bulgaria with its principal place of business located at 3 Ogneborets St., City of Sofia, Post Code 1618, Bulgaria, BULSTAT: 181043220.

5. On information and belief, Ismet Yucetas is a member of Meads-Maes and a resident of Illinois.

6. On information and belief, UGS is a company created and validly existing under the laws of Bulgaria with its principal place of business located at Str. Damyanitsa 3-5, City of Sofia, Post Code 1619, Bulgaria, BULSTAT 180918644.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1335.

8. This is the correct venue under 28 U.S.C. § 1391(b)(2) because a substantial part of property that is the subject of this Complaint is in the Central District of Illinois.

## COUNT I: INTERPLEADER

9. Petefish incorporates all preceding allegations in this paragraph.

10. In 2023, UGS was awarded a contract (the "Main Contract") to facilitate the Chiren Underground Gas Storage Expansion Project (the "Project") by a Bulgarian contracting authority, Bulgartransgaz EAD (the "Employer").

11. Under the Main Contract, UGS was to facilitate construction of above- and below-

ground gas storage facilities and gas transfer infrastructure located in Chiren, Bulgaria.

12. On or around November 24, 2023, Defendants entered into a Lump Sum Turn Key ("LSTK") Integrated Project Management Contract (the "Subcontract") wherein Meads-Maes and UGS would drill thirteen underground gas storage wells (ten exploitation wells and three observational wells) and provide other ancillary services as part of the Project. A true and correct copy of the Subcontract is attached as Exhibit 1.

13. Under section 18.9 of the Subcontract, 30% of the total contract price, or $21,000,000,[2] was to be paid as an advance payment (the "Advance Payment") to Meads-Maes. Ex. 1 § 18.9.

14. A condition of the Advance Payment required that Meads-Maes provide an Unconditional Advance Payment Bank Guarantee to UGS, to be procured through Petefish. Petefish was to effectively hold the Advance Payment in escrow on behalf of Defendants. Ex. 1, § 19.1.

15. The Subcontract has a Governing Law and Dispute Resolution clause that requires Defendants to attempt to resolve any dispute arising under the agreement amicably and in good faith. If that does not happen, the Subcontract requires Defendants to submit the dispute to the London Court of International Arbitration in London, England. Ex. 1, § 37.

16. After the Subcontract was executed, UGS made the Advance Payment to Petefish, Petefish issued the Unconditional Advance Payment Bank Guarantee to UGS, and Meads-Maes began to perform its obligations under the Subcontract.

17. On or around November 27, 2023, Petefish issued an Advance Payment Refund

---

[2] Even though this Complaint involves two Bulgarian entities and funds related to a Bulgarian business transaction, all amounts discuss in the Complaint are in U.S. Dollars unless the allegation states otherwise.

Guarantee letter (the "Original Letter") to Meads-Maes and UGS under section 18.9 of the Subcontract and confirmed that it had received the $21,000,000 Advance Payment from UGS. Under the Original Letter, UGS was the beneficiary of the guarantee.

18. The Original Letter stated that any payments approved by UGS were to be made by Petefish to Meads-Maes and would reduce the Advance Payment being held by Petefish for the remaining period of the Original Letter's validity, which was originally set to expire on April 30, 2024.

19. On or around June 10, 2024, Petefish issued a superseding Advance Payment Refund Guarantee letter (the "Guarantee") to Meads-Maes and UGS. The Guarantee reduced the Advanced Payment Refund Guarantee to $7,000,000 since payments had been approved by UGS and made to Meads-Maes for work under the Subcontract. UGS remained the beneficiary of the Guarantee.  The Guarantee provides for expiration date to September 8, 2024. A true and correct copy of the Guarantee is attached as Exhibit 2.

20. Petefish stated in the Guarantee that it "hereby issue[s] to [UGS's] benefit this Guarantee . . . and irrevocably and unconditional[ly] undertake[s] to pay to you any amount (or, possibly, any portion thereof) up to and not to exceed US$'s 7,000,000.00 . . . with no objections on your first written demand signed by an authorized representative." *See* Ex. 2.

21. On or around August 15, 2024, UGS submitted a demand (the "Demand") to Petefish for full payment of the Guarantee amount (the "Guarantee Funds"). A copy of the Demand, including all attachments thereto, is attached as Exhibit 3.

22.  The Demand included a written statement outlining Meads-Maes' alleged breaches under the Subcontract (the "Statement of Breach"), dated August 12, 2024. stating that Meads-Maes failed to supply all goods and materials in conformity with the terms of the Subcontract and

failed to perform the work in a due and timely manner. *See* Ex. 3, pp. 12–14.

23. The Statement of Breach alleged that Meads-Maes "has two major obligations under the [Subcontract] that should have been fulfilled within strict deadlines prior to the beginning of the Drilling Works, and which have been secured through the Bank Guarantee":

    a. the preparation of Well Designs and Drilling Programme due within 45 days after the materials' technical specifications were approved by the Employer under the Subcontract, which term expired on 7 February 2024; and,

    b. delivery of all Deliverables (materials and equipment necessary for the Wells) in accordance with approved technical specifications and Well Designs / Drilling Program accompanied by applicable documents and certifications proving their fitness for use.

Ex. 3, p. 13.

24. The Demand included six letters written by UGS or Hill International that had been sent to Meads-Maes between June 5 and August 1, 2024. *See* Ex. 3, pp. 15–53.

25. Petefish notified Meads-Maes of UGS's Demand and provided UGS a copy of the Demand on or around August 20, 2024. Petefish's correspondence to Meads-Maes is attached as Exhibit 4.

26. In its correspondence, Petefish stated that UGS had provided "all necessary document[s] to identify the breach or failure to observe the terms of the [Subcontract]" pursuant to the Guarantee, and explained that it would "be forwarding the []$7,000,000 at the close of business on August 21, 2024" unless Petefish received confirmation that the Demand was rescinded or the breaches cured. Ex. 4, p. 1.

27. Meads-Maes, through counsel, contacted Petefish via phone and letter on August

23, 2024; a copy of the August 23 letter is attached as <u>Exhibit 5</u>.

28. In the August 23 letter, Meads-Maes disputed that it breached the Subcontract, explaining its position that UGS's Demand had not included documentation sufficient to establish any breach. *See* Ex. 5, pp. 1–2.

29. Meads-Maes also provided more documents to Petefish in support of Meads-Maes' position, *See* Ex. 5, pp. 3–24, and requested that Petefish not issue any payment to UGS until the close of business on September 5, 2024, so that Defendants could attempt a resolution, *id.* at p. 2.

30. September 5, 2024 has since passed, and Defendants are still in dispute over whether or not Petefish is required to comply with the Demand. Because of this dispute, Defendants assert conflicting claims to the Guarantee Funds.

31. Petefish cannot determine whether Meades-Maes or UGS is entitled to the Guarantee Funds. Maybe neither Defendant, or at most one Defendant, is entitled to the Guarantee Funds, but Petefish fears that any course of action will subject it to liability from either UGS or Meads-Maes.

32. Petefish has no interest in the Guarantee Funds beyond its duty to pay out the Guarantee Funds to the proper party. As a result, Petefish is an innocent stakeholder with respect to the Guarantee Funds.

33. Petefish is ready and able to pay the Guarantee Funds as the Court directs. The Guarantee Funds are currently held in escrow at Petefish, so Petefish can maintain the status quo and keep the Guarantee Funds in escrow for the pendency of this suit, if the Court would prefer.

34. For these reasons, there is an actual, justiciable controversy among Defendants as to their respective potential rights to the Guarantee Funds.

35. Petefish requests that Defendants be directed to submit whatever claims they may

have or wish to assert to the Guarantee Funds, in this proceeding.

36. Petefish seeks an award of reasonable attorneys' fees and costs to be paid from the Guarantee Funds.

**PRAYER FOR RELIEF**

Petefish prays for the following relief:

A. An order directing Defendants to assert any claims they may have to the Guarantee Funds;

B. An order authorizing and directing Petefish to either retain the Guarantee Funds in escrow for the pendency of this action, or to pay the Guarantee Funds as the Court directs;

C. An order discharging Petefish from any further liability under 28 U.S.C. § 2361;

D. An order under 28 U.S.C. § 2361 permanently restraining Defendants from instituting and/or prosecuting any other suit, cause of action, or civil proceeding in any State, Federal, or other court of competent jurisdiction against Petefish asserting claims for the Guarantee Funds;

E. An order directing any party, person, or entity to whom any portion of the Guarantee Funds is disbursed to provide Petefish with all information necessary to allow Petefish to fulfill its reporting obligations to the United States Department of the Treasury, the Federal Deposit Insurance Corporation, the Internal Revenue Service, and any and all other state and federal governmental agencies;

F. An order awarding Petefish reasonable attorney fees and costs to be paid from the Guarantee Funds; and,

G. Any other relief that the Court believes to be equitable and just.

Dated: September 9, 2024

Respectfully submitted,
**Petefish, Skiles & Co., Interpleader Plaintiff**

_____/s/ Anthony D. Schuering_____
One of its Attorneys

**BROWN, HAY & STEPHENS, LLP**
Harvey M. Stephens, ARDC # 6198845
Anthony D. Schuering, ARDC # 6333319
205 South Fifth Street, Suite 1000
Springfield, IL 62705-2459
Telephone: (217) 544-8491
hmstephens@bhslaw.com
aschuering@bhslaw.com

10452-CONV
4D57198