E-FILED
Monday, 09 September, 2024  04:48:29 PM
Clerk, U.S. District Court, ILCD



Michael Best & Friedrich LLP
Attorneys at Law
James P. Fieweger
T 312.596.5849
E jpfieweger@michaelbest.com

August 23, 2024

**VIA USPS FIRST CLASS MAIL AND EMAIL**

Harvey M. Stephens
**Brown, Hay & Stephens, LLP**
205 S. Fifth Street, P.O. Box 2459
Springfield, IL 62705
hmstephens@bhslaw.com

Re:     MEADS-MAES Guarantee

Dear Harvey,

As I mentioned during our August 21, 2024 telephone conference, our client contests the breach allegations included in UGS's recent demand for payment under the guarantee. Enclosed is correspondence from MEADS-MAES responding to the letters UGS submitted to Petefish, Skiles & Co. Bank.

This correspondence demonstrates that most of the allegations that UGS asserted are disputed. While it may be difficult to determine based solely on the correspondence which side might ultimately prevail in these disputes, the correspondence provides a more complete picture of the state of the relationship between UGS and MEADS and should demonstrate that it would be ill-advised for Petefish to issue any payments to UGS at this stage.

I noted that one of the alleged breaches that UGS asserted is MEADS-MAES' purported failure to deliver required documentation.  The correspondence shows that MEADS has provided many (if not all) of the required documents in electronic format. UGS asserted that MEADS-MAES was required to submit the documentation in hard copy. I have reviewed the contract awarded to MEADS-MAES and it has no language requiring the documentation to be submitted in any particular format. Further, my client has worked with some of the leading international companies in the oil and gas industry – companies such as Haliburton, Tenaris SLB/Cameron and Devis-Lynch – and none of these companies require the use of hard-copy documents. Therefore, neither the contract between GBS and MEADS-MAES nor industry practice imposes the conditions GBS it attempting to assert.

More importantly, UGS's submission to Petefish intentionally fails to provide a complete description of the issues between UGS and MEADS-MAES.  Specifically, UGS fails to inform the bank of a longstanding dispute based on UGS's designation of a second contractor, Mingeouniverse, to design the wells. MEADS-MAEs has attempted resolve this issue, including through multiple meetings with UGS executives.  Although the company that retained UGS to complete the storage tank expansion project has confirmed that MEADS-MAES is the authorized contractor, MEADS-MAES has been informed that political considerations in Bulgaria prevent removing the Mingeouniverse from its contract. MEADS-MAES contends inserting

PLAINTIFF'S
EXHIBIT

5



Michael Best & Friedrich LLP
Attorneys at Law
James P. Fieweger
T 312.596.5849
E jpfieweger@michaelbest.com

Mingeouniverse into this position impeded on MEAD-MAES' designated scope of work and allowing a third party to be involved in the well design process is inconsistent with MEEADS-MAES obligations under its contracts. This issue is more fully described in the enclosed correspondence from MEADS-MAES to UGS dated 02/08/2024.

This dispute regarding Mingeouniverse underlies many of the issues between UGS and MEADS-MAES.  MEADS-MAES contends that UGS is likely retaliating against MEADS-MAES because it has advocated for UGS to take a politically compromising step, and therefore has elevated minor disputes into trumped-up claims of breach.  Not only has UGS refused to remedy the issue with the additional contractor, it refused to pay the invoice MEADS-MAES recently submitted. As a result of this ongoing and unacceptable circumstance, MEADS-MAES has declared UGS in breach of its agreement.In addition, the project was recently suspended when the European Public Prosecutor's Office notified UGS that it is under investigation. As a result, all construction and other active has ceased while MEADS-MAES and other parties await further clarification from the EPPO.

This brief description, which does not attempt to fully describe the compete scope of the issues between UGS and MEADS-MAES, demonstrates there is much more to this dispute than the one-sided presentation offered by UGS. The owner of UGS, working through diplomatic representatives in Sofia, Bulgaria recently reached out to MEADS-MAES to arrange a meeting to  discuss a possible resolution of their disputes, which MEADS-MAES remains willing to pursue. In light of these developments, as well as the fact that the materials submitted by UGS do not adequately demonstrate a breach by MEADS-MAES, we ask that the bank refrain from issuing any payment before the close of business on September 5, 2024.

While we hope that this matter can be resolved without resort to litigation, it is evident that UGS has not proffered objective, reliable documentation sufficient to establish that MEADS-MAES has breached their agreement or that UGS is entitled to payment under the guarantee.  If the bank proceeds with payment before the disputes between those parties can be resolved objectively, Petefish will expose themselves to potential liability and our client reserves all rights, remedies claims or arguments.

Regards,

**MICHAEL BEST & FRIEDRICH LLP**

James P. Fieweger
Partner

JPF:dah



**Michael Best & Friedrich LLP**
**Attorneys at Law**
**James P. Fieweger**
**T** 312.596.5849
**E** jpfieweger@michaelbest.com

CC: Courtney Tedrowe

cdtedrowe@michaelbest.com

---------- Forwarded message ---------
From: YUCETAS, Ismet <y.ismet@me-ads.com>
Date: 29 Jul 2024 Mon at 01:21
Subject: Re: Equipment Certification and Documents for Submission
To: Liapis, Nikolaos <NikolaosLiapis@hillintl.com>
CC: Base, Vratsa <vratsabase@me-ads.com>, Darina.Koleva@bulgartransgaz.bg <Darina.Koleva@bulgartransgaz.bg>,
vladislav.petrov@bulgartransgaz.bg <vladislav.petrov@bulgartransgaz.bg>, Mariana.Hristova@bulgartransgaz.bg
<Mariana.Hristova@bulgartransgaz.bg>, Marin.Marinov@bulgartransgaz.bg <Marin.Marinov@bulgartransgaz.bg>,
Zhelyo.Kaloyanov@bulgartransgaz.bg <Zhelyo.Kaloyanov@bulgartransgaz.bg>, Georgi.Basmadjiev@bulgartransgaz.bg
<Georgi.Basmadjiev@bulgartransgaz.bg>, Konstantin.Bonev@bulgartransgaz.bg
<Konstantin.Bonev@bulgartransgaz.bg>, Valeri.Petrov@bulgartransgaz.bg <Valeri.Petrov@bulgartransgaz.bg>,
Angel.Konov@bulgartransgaz.bg <Angel.Konov@bulgartransgaz.bg>, Ivaylo.Dimitrov@bulgartransgaz.bg
<Ivaylo.Dimitrov@bulgartransgaz.bg>, mpencheva@gbs-bg.com <mpencheva@gbs-bg.com>, aaleksiev@gbs-sofia.com
<aaleksiev@gbs-sofia.com>, smarkov@gbs-bg.com <smarkov@gbs-bg.com>, mjeleva@gbs-bg.com <mjeleva@gbs-
bg.com>, bkrumov@gbs-bg.com <bkrumov@gbs-bg.com>, ugsdrilling@gbs-bg.com <ugsdrilling@gbs-bg.com>,
knaidenova@gbs-bg.com <knaidenova@gbs-bg.com>, Günay DIL <d.gunay@me-ads.com>, Yilmaz Karahan
<k.yilmaz@me-ads.com>, jon boyle <b.jon@me-ads.com>, Bilal Velat İLHAN <i.bilal@me-ads.com>, Zurita, Cesar
<z.cesar@me-ads.com>, CH-1 Engineer <challenger1@me-ads.com>, challenger2 Engineer <challenger2@me-ads.com>,
Drilling Fluids Supervisor <dfsupervisor@me-ads.com>, logistic, meads <logistic@me-ads.com>, Devrim ÇELİK
<c.devrim@me-ads.com>, Kenan Aldemir <a.kenan@me-ads.com>, Şerif ALTAN <a.serif@me-ads.com>, Mehmet Zeki
GÜRELİ <g.zeki@me-ads.com>, İsmail Sezgin <Finance@me-ads.com>, Fahri Özbek <o.fahri@me-ads.com>, ME-ADS
Legal <yamac.guneyli@me-ads.com>, Drew Hembling <dhembling@me.com>, Tommy Balke
<tommybalke@basic1.net>, Franklin Espiga <franklinespiga@basic1.net>, colin.lambertus@emlaw.co.uk
<colin.lambertus@emlaw.co.uk>, info@hill-chirenugs.com <info@hill-chirenugs.com>, Liesbeth Truyens
<liesbeth.truyens@schoups.be>


Dear Nikolaos,

First of all you come to İstanbul meeting to solve the disputed topic, the majer one to make MMUJV as main sole
designer within 3 weeks from your 22 March mail. After one week you come with 14 points to be solved to be able to
bring a contract signed fairly  execution according to EU public procurement rules.  İt was  you in person who told us at
the 20 March meeting saying, *according to public procurement rules it can not be on paper one company as
designer designer in reality someone else does the design.*  We have minutes of that 2 days meeting to our luck.

So far you help to solve only one problem which is drilling program approval and the amendment you agreed without
MMUCJV *( As Official Drilling Contractor According to Public Procurement Registry)* approval is a
horrible amendment you have agreed to make 2+11 wells. I hope you are realizing you made a dead birth for this drilling
campaign by splitting the contract to 2 bach. Also without the approval of Lump Sum Drilling Contractor approval you
violate our contract a step further than previous violations.

We do not think Hill İnternational is acting fairly and according to international fair auditable public procurement project
management rules.  It is clear there is a conflict of interest and you are deliberately making things difficult. If you do not
come with a Hill subject matter expert  signed report, I believe you do not have the right to ask such a question. We do
not get any report or study signed by Hill's name so far. İf the report you mention is signed and stamped by Viktor  we
are going to legally replay this letter soon. I am asking if you are an official technical adviser why you do not sign such
irrelevant  comments by Hill subject matter experts.  I do not believe an subject matter expert from Oil and Gas would
not come with such a comment to make every thing questionable grey.  If a Hill representative sends such a report, We
will technically replay. You know a fair expert will not come with such a comment and no sensible comments.

3

I want to say once more all equipment and all certificates are in place, No need to make minor  artificial issues to change the direction of attention from  all such huge contract violations done by GBS. When the contract we signed is respected and all violations repaired, we are ready to execute drilling, Which is the state from the beginning of the year we are ready to start drilling.


Best Regards.



On Sun, Jul 28, 2024 at 8:47 PM Liapis, Nikolaos <NikolaosLiapis@hillintl.com> wrote:

Bilal,

Is this package different than the one officially submitted by MEADS to GBS on 16/72024?

A detailed review, which lasted more than a week, has been executed on that official package, and the results have already been recorded and officially forwarded accordingly.

Re-reviewing the same things is a waste of resources.

Kindly advise.


Wjlfwix1


Smp Qrfunx

Tujwfytsx InwjhytwiJsjwl~Xjhytw

MmqNyjwsfytsfqlNsh3

8<F1Pnknxnfx F{jszj

R fwtzxnnfFynjsx

Lwjjhj

Yjc̈085 765 ;65 :6<6

Kf}?085 765 ;65 :6<7

R tgnj JZ?085 ;>: :;= =567

R tgnj ZX?06 <68 =>< >;>9

SptdftxQrfunxE mqpsyhtr

|||3nmpsyhtr



**From:** Base, Vratsa <vratsabase@me-ads.com>
**Sent:** Sunday, July 28, 2024 2:56 PM
**To:** Darina.Koleva@bulgartransgaz.bg; vladislav.petrov@bulgartransgaz.bg; Mariana.Hristova@bulgartransgaz.bg; Marin.Marinov@bulgartransgaz.bg; Zhelyo.Kaloyanov@bulgartransgaz.bg; Georgi.Basmadjiev@bulgartransgaz.bg; Konstantin.Bonev@bulgartransgaz.bg; Valeri.Petrov@bulgartransgaz.bg; Angel.Konov@bulgartransgaz.bg; Ivaylo.Dimitrov@bulgartransgaz.bg; mpencheva@gbs-bg.com; aaleksiev@gbs-sofia.com; smarkov@gbs-bg.com; mjeleva@gbs-bg.com; bkrumov@gbs-bg.com; ugsdrilling@gbs-bg.com; knaidenova@gbs-bg.com; Ismet YUCETAS <y.ismet@me-ads.com>; Günay DIL <d.gunay@me-ads.com>; Yilmaz Karahan <k.yilmaz@me-ads.com>; jon boyle <b.jon@me-ads.com>; Bilal Velat İLHAN <i.bilal@me-ads.com>; Zurita, Cesar <z.cesar@me-ads.com>; CH-1 Engineer <challenger1@me-ads.com>; challenger2 Engineer <challenger2@me-ads.com>; Drilling Fluids Supervisor <dfsupervisor@me-ads.com>; logistic, meads <logistic@me-ads.com>; Devrim ÇELİK <c.devrim@me-ads.com>; Kenan Aldemir <a.kenan@me-ads.com>; Şerif ALTAN <a.serif@me-ads.com>; Mehmet Zeki GÜRELİ <g.zeki@me-ads.com>; İsmail Sezgin <Finance@me-ads.com>; Fahri Özbek <o.fahri@me-ads.com>; ME-ADS Legal <yamac.guneyli@me-ads.com>; Liapis, Nikolaos <NikolaosLiapis@hillintl.com>; Drew Hembling <dhembling@me.com>; Tommy Balke <tommybalke@basic1.net>; Franklin Espiga <franklinespiga@basic1.net>; colin.lambertus@emlaw.co.uk
**Subject:** Equipment Certification and Documents for Submission

[CAUTION: This email originated from outside of the organization. DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.]

Dear All,

I am re-sending all documents for all 13 wells.

Please find below the Wetransfer link with all documents attached.
Equipment of 13 wells, physically checked many times, All eguipment for 13 wells is at our base. There is no mising single bolt.
Please kindly let a fair subject matter expert re-check to see all documents here.

There is no missing document.

https://we.tl/t-XQp2VW2Jtl

Best Regards.

--

Kind Regards



**Bilal Velat İLHAN** *Base Manager*
**ME-ADS** | *Middle East Air Drilling Services*
**Chiren-Vratsa Base**
Food Production Zone, Western Industrial Zone, Vratsa/Bulgaria
Vratsa Base Location
Mob:+359 89 017 79 07
Mob: +90 507 536 11 88
vratsabase@me-ads.com | www.me-ads.com

**UGS Drilling Chiren DZZD**

*Out No.:* ΠΓИ3000144/17.07.2024

**TO:**
**MEADS-MAES USA CHIREN JOINT VENTURE COMPANY DZZD**
BULSTAT: 181043220
3 Ogneborets St., City of Sofia, Post Code 1619, Bulgaria

**Attention to:**
**Mr İsmet Yücetaş**
Legal representative
y.ismet@me-ads.com

**RE:**      **LUMP SUM TURN KEY INTEGRATED PROJECT MANAGEMENT CONTRACT FOR DRILLING 13 UGS WELLS AND ALL ASSOCIATED SERVICES REGARDING CHIREN UNDERGROUND GAS STORAGE EXPANSION PROJECT No. 000058 dated 24/11/2023 (the "Contract")**

**Subject:**    **Proposal for a partial call out**

**Date:**     **17 July 2024**

*Capitalised terms used herein shall have the meaning attributed thereto in the Contract, unless the context where used herein suggests otherwise.*

**Dear Mr Yücetaş,**

In relation to the Contract referred above, you are aware that in the last couple of weeks we managed to make some important progress towards getting ready to start Drilling.

We informed you by letter Out. No. ΠΓИ3000136/9.7.2024, with subject: '*Completion of Well Designs*', that the Well Designs for Wells O-2 & E-83 were approved by Employer. On 11 July 2024, by email, we gave you further update on the progress of receiving the construction permits for those Wells, and we reminded you what further information we need from you. This morning you were informed that the construction permit for Well E-83 is issued.

Thus, we are expecting issuance and entry into legal force of the construction permit for Well O-2 very soon.

However, the Well Designs for the remaining eleven Wells are still to be finalised by Contractor and, as communicated, we are expecting your swift delivery there.

By our letter to you Out. No. ΠΓИ3000135/04.07.2024, with subject: '*Inspection and acceptance of Deliverables*', we requested that you provided a complete list of all equipment and materials delivered on Site and a full set of accompanying documents and certificates. Without receiving all necessary documents we may not check and accept with the Employer any delivered materials. Since last Friday, 12 July, our team is trying to work with your staff in order to collect the necessary documentation and then check whether all materials and equipment have been delivered with accompanying compliant documents. Yesterday we received an USB with the files of the scanned certificates and documents for preliminary review. In case there are missing certificates and documents, we are promoting you to exert your best efforts in order for the complete list of equipment and materials delivered and related documents to be handed over to our team within two business days as of the notification for missing certificates and documents, so we can start checking whether all is compliant with the Contract

**UGS Drilling Chiren DZZD**

requirements. This includes the rigs inspection certificates as well. If you fail to hand over smoothly the list of materials and equipment and related documentation within such time, we shall consider that you are failing to perform your Contractual obligations in respect of the Deliverables.

We are eager to start Drilling Works as we are already facing huge delays under the Main Contract. However, as per the Contract, we should send you a Call Out Order only after all Well Designs have been finalised and accepted according to approved technical specifications, and all construction permits have been issued so we can be preparing the Sites for the Drilling Works (Cl. 4.6 of Contract). Without sending you a Call Out Order we are not able to accept your complete Mobilisation (including the delivery of all equipment and materials) and pay the remainder of the First Payment as per Cl. 18.10 of the Contract. Moreover, we cannot accept any materials and equipment if they do not comply with the technical specifications and the final and accepted Well Designs.

With the purpose to limiting our and your exposure of bigger delays before the Employer, we are ready as an expression of good will to allow you to start Drilling Works for the first two Wells O-2 & E-83 in respect of which the Well Designs have been finished. Such partial call out would allow us to verify and accept completion of the partial Mobilisation of the Deliverables and Contractor's Equipment and Personnel as regards these two first Wells. If all is duly delivered and ready for starting Drilling, including all necessary third party services and equipment are secured, we will be able to partially release to you the remainder of the First Payment, pro rata for these first two Wells. Once completed, we will be able to make the next payments for these Wells too.

We believe such flexible approach would benefit both Parties.

Provided that it would be just a partial call out, as not all Well Designs are ready and not all construction permits are issued, we consider that the following Contractual adjustments would be fair to apply:

1. Once we have the construction permits for Wells O-2 & E-83 and we are certain that the Sites are ready, we will send you the partial Call Out Order.

2. Within no more than 15 days or another term as we agree you shall prove to us that you are fully Mobilised to start and complete these two Wells. This means we will need to check and verify all materials and equipment necessary for these two Wells. We have to receive all documents and certificates for the materials and equipment, and Company and Employer will check and accept them if compliant. Contractor's Personnel and Contractor's Equipment shall be ready for spud which must be justified with the proper documentation.

3. You have to prove to us that all third party equipment and all other Contractor's Equipment is fully insured as per Cl. 22 of the Contract.

4. If the partial Mobilisation is accepted and you are ready to spud, we will pay the remainder of the First Payment under Cl. 18.10 for two Wells, which is at a rate of EUR 996,923.08 per Well.

5. To simplify the administrative tasks, we consider that we can keep the Advance Payment Bank Guarantee currently in place valid until a final Call Out Order, and we do not need to replace it partially by a partial Performance Bond now. Provided that, due to the delays to finishing the Well Designs and mobilising all materials and equipment necessary for all Wells on Site, a further extension of the Advance Payment Bank Guarantee is needed, you should cover any and all further administrative costs and bank fees in this respect.

6. Any and all Stand-By Cost will be due only in the cases of delays in the performance of these first two Wells due to Company and in accordance with Contract's terms. After completion of the first two Wells, if the grounds for issuance of a next Call Out Order for the next Wells have not occurred, there will be no Stand-By Cost due to Contractor for any Stand-By between Completion of the first two Wells and the start of the next ones.

7. The time for completion of all Drilling Works, as defined in Clause 9.2, will be calculated to account any possible pause between the first Wells and the call out for next ones. Thus, Contractor will not be exposed to the risk of delay if Works during Drilling are done timely.

**UGS Drilling Chiren DZZD**

8. Before spud, all approved official design documentation and attachments must be signed by you.

9. The drilling programs for these two wells must be updated to be in concordance with the approved designs for Well E-83 and O-2 as soon as possible. It must be submitted to the Client urgently before spud

10. Provide Emergency plans – instruction and procedures to be followed in case of an emergency on site.

11. Provide Well Testing Program for review

We expect that you confirm to us within two business days that you accept the above approach so we speed up the Works. The technical teams, together with Hill International, will be able to then agree on the specific timeline of next steps.

For the avoidance of doubt, this letter is not and shall not be considered as a Call Out Order.

We reserve all rights, remedies, claims, and defences we may have under contract or law, and this letter shall not be construed as a waiver of any such rights, remedies, claims, or defences.

Yours sincerely: ................................

**Maya Pencheva,**
**Representative**
**UGS DRILLING CHIREN DZZD**



| | |
|---|---|
| **Project Name** | : Chiren Underground Gas Storage Expansion Project |
| **Date** | : 02/08/2024 |
| **Letter No.** | : MMUCJV-DZZDUGSCD-LTR-0027 |
| **Attention to** | : UGS Drilling Chiren DZZD, BULSTAT 180918644 |
| | Str. Damyanitsa 3-5, City of Sofia, Post Code 1619, Bulgaria |
| **Subject** | : Response to Company's Assertions in Recent Correspondence |
| **Reference** | : a) Company Letter dated 31.07.2024 numbered ПГИ3000156 |
| | b) Company Letter dated 01.08.2024 numbered ПГИ3000157 |
| | c) Company Letter dated 30.01.2024 numbered ПГИ3000077 |
| | d) Employer Letter dated 26.01.2024 numbered ПГВ000036 |
| | e) Contractor Letter dated 26.01.2004 numbered MMUCJV-DZZDUGSCD-LTR-0001 |

Dear MRS. MAYA PENCHAVA,
Dear MR. NIKOLAOS LIAPIS,

This letter has reference to the Lump Sum Turn Key Integrated Project Management Contract for Drilling 13 UGS Wells (10 New Exploitation Wells and 3 Observation Wells) & Associated Services Regarding Chiren Underground Gas Storage Expansion Project (the "LSTK Contract") numbered 000058 dated November 24th, 2023 signed between UGS Drilling Chiren DZZD, BULSTAT 180918644, Str. Damyanitsa 3-5, City of Sofia, Post Code 1619, Bulgaria ("Company") and MEADS-MAES USA Chiren Joint Venture Company, BULSTAT: 181043220, 3 Ogneborets St., City of Sofia, Post Code 1619, Bulgaria, (the "Contractor") in relation to the execution of the Chiren UGS Expansion Project (the "Project"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings given to them in the LSTK Contract as applicable.

Contractor acknowledges receipt of the Company's Ref. (a) and (b) letters regarding your response to Contractor's Notice of Overdue Payment and Initiation of 10-Day Notice Period and Equipment Certification and Documentation Review. We regret to reject Company's groundless breach claims and unfair warnings related to remedy these fiction breaches as the allegations outlined in your Ref. (a) letter cannot be defined as a failure to fulfil any of our contractual obligations which can be caused to a "breach" of the LSTK Contract.

In reply to Company letter and for the sake of your crystal-clear understanding, we would once again iterate some of the facts and contractual provisions.

§   **MMUCJV as an Official Subcontractor**

Employer agreed and confirmed that MMUCJV is a qualified official drilling subcontractor responsible for carrying out and complete all Works stipulated in the LSTL Contract including but not limited to providing all detailed engineering, well designs, specifications, drawings, data and other technical documents and executing the drilling of thirteen (13) Wells at the Chiren UGS Site as per the LSTK Contract[1] (Refer to Ref.(c)).
However, official communication (Refer to Ref.(d)) regarding Employer's approval of the Contractor clearly demonstrated that other contractor, *Mingeouniverse-Engineering-Nis-Mgu EOOD* (the

---

[1] Clause 4; Clause 6; Clause 9.2 (i); Clause 11; Clause 12; Clause 15 *et al.*



"Mingeouniverse") had been nominated for the execution of the well design works of all the Wells at Chiren UGS Project, which is explicitly within the Work scope of MMUCJV pursuant to LSTK Contract. As per the letters in the reference, Company asserted regarding this issue as "*... have no relation with your scope...*" or "*... scope of their contract does not duplicate, contradict or affect somehow the scope of your contract*". Not only are these allegations absolutely false, it shows Company's intention to divert from its own noncompliance in dealing with UGS wells' design issue from the beginning to the end as well.

### §  Lump Sum Turnkey Contract & Back-to-Back Principle

It is enough for the time being to stress that the Contract is a Lump Sum Turnkey ("LSTK") agreement. This means that the Parties have agreed on a fixed price for the entire Scope of Work (Refer to Clause 3.1). The LSTK Contract logic dictates a holistic execution and delivery of the entire Project. Moreover, Back-to-Back principle not only enhances the stability and completeness of LSTK Contract but ensures that the obligations, rights, and responsibilities between the Main Contract and LSTK Contract are aligned.

In the light of the former statement, any amendments that impact the Contractor's obligations, scope of work, or terms should be communicated to the Contractor to ensure alignment with the back-to-back principle. If the Company makes amendments/changes to the Scope of Work without informing or seeking approval from the Contractor, it leads to disputes, especially if the amendments materially affect the Contractor's performance or obligations.

Fact of the matter is:

- Till the receipt of Employer's Ref.(d), as a responsible contractor the Contractor had worked hard to prepare the design and detailed engineering of the Wells, and the draft version of the program was submitted to the Company.
- It has come to our attention that a subcontractor, the Mingeouniverse, has been presented as the responsible party for the engineering design of the Wells. This action suggests that our Work Scope was altered without the Contractor's knowledge, despite the clearly agreed-upon terms in the Contract.
- Company clearly breached the LSTK Contract by submitting the Mingeouniverse for approval to Employer for the execution of "Detailed Design Phase" and subsequently obtaining Employer's approval.
- Consequently, the Company's conduct has disrupted the stability and completeness of the Project, contrary to the terms agreed upon in the Contract.

### §  Suspension & Support

Despite a reasonable remediation period was given to the Company for eliminating the abovementioned breach of the LSTK Contract (Refer to Ref.(e)), Company has continued showing lack of commitment and duly performance of its obligations arising out of the LSTK Contract. Eventually, due to the disintegration of the entirety of the Contractor's Scope of Work, the Contractor has ceased all its Works under the Contract until the Company rectifies the current breach and complies with the LSTK Contract in its entirety. This cessation of work will remain in effect until the Company ensures full adherence to the contractual terms and restores the integrity and continuity of the Project as originally agreed.



On the other hand, with our best endeavours the Contractor has tried to clarify its situation and how its position drastically affected due to the Company's failure to comply its contractual obligations for the sake of supporting and encouraging the Company to remedy this breach and initiate the
In a meeting on February 6, 2024, at BTG Mr. Malinov's office, we asserted that without being designated as designers, we would cease to continue work. This was acknowledged by Mr. Malinov, with Maya Pencheve as a witness. Subsequent meetings included key figures such as Dimitri Malinov (BTG CEO), Maya Pencheve (UGS Chiren JV CEO), and Ismet Yucetas (MMUCJV CEO). It was clearly mentioned that despite not being the official designer, we would give our support to you until the issue was resolved.

On March 20, Hill committed to making us the official designers within three weeks, which was agreed upon by all parties. On April 11, Mr. Kalin Pashev of your Holding Group indicated that GBS could not address the contractual issue of assigning Mingeouniverse due to Bulgaria's political situation. A follow-up meeting on April 17 in Istanbul, with Mr. Emil from GBS and Mr. Nickolaos, offered 7M Euros for the delay, which we rejected. We reiterated that without being designers, we cannot manage and execute a LSTK contract.

We would like to again mention that our position remains unchanged: unless the breach of Contract related to the change in designer scope are remedied, Contractor will not participate in the LSTK Contract's execution.

§  **Company's Assertions**

It is highly disappointing to see Company's deliberate and wilful attempt to shift blame to the Contractor for its own failure to comply with its obligations under the Contract or the Laws needed for hold harmless the Contractor from and against any and all breaches of Contract caused by the Company as a prudent Company.

Fact of the matter is:
- We are not legally obligated to provide further design and engineering documentation, as we have already completed the full design and engineering for each of the 13 Wells, despite not being officially designated as the designer by BTG. Your comments are irrelevant and the unilateral amendment of the contract execution without our approval constitutes a breach of the LSTK Contract philosophy and EU public procurement standards.
- Regarding your assertion about undelivered deliverables and defective certification, we would suggest a joint inventory check of materials at Vratsa next week with BTG, UGS Chiren, Hill, and MMUCJV to confirm material status for all 13 wells.

Please note that your non-compliance of the duly signed and enforceable LSTK Contract and your crystal clear delays in performing your obligations pursuant to LSTK Contract through asserting fictious arguments of yours constitute an explicit breach of the LSTK Contract as we notified earlier with our letter referenced herein. Your breach still continues as of the date of this letter as you have not started to remedy those events.



We hereby notify you of the same and request you to remedy this situation in accordance with the LSTK Contract. If you do not fully remedy these breaches to the satisfaction of Contractor and as per the Contract as soon as possible, this will be regarded as Company's default. Kindly be notified that under such case by reserving any and all our rights arising out of the Contract and by law, Contractor shall proceed with exercising its rights as stipulated in the Contract.

Best Regards,
Günay Dil
Project Manager
MEADS-MAES USA CHIREN JOINT VENTURE COMPANY



| | |
|---|---|
| **Project Name** | : Chiren Underground Gas Storage Expansion Project |
| **Date** | : 21/08/2024 |
| **Letter No.** | : MMUCJV-DZZDUGSCD-LTR-0029 |
| **Attention to** | : UGS Drilling Chiren DZZD, BULSTAT 180918644 |
| | Str. Damyanitsa 3-5, City of Sofia, Post Code 1619, Bulgaria |
| **Subject** | : Answer to your Letter ПГИ3000167, Notice of Suspension of the Contract |
| **Reference** | : a) Company Letter dated 19.08.2024 numbered ПГИ3000167 |
| | b) Contractor Letter dated 17.07.2024 numbered MMUCJV-DZZDUGSCD-LTR-0023 |
| | c) Contractor Letter dated 30.07.2024 numbered MMUCJV-DZZDUGSCD-LTR-0025 |
| | d) Contractor Letter dated 02.08.2024 numbered MMUCJV-DZZDUGSCD-LTR-0027 |

Dear MRS. MAYA PENCHAVA,
Dear MR. NIKOLAOS LIAPIS,

This letter has reference to the Lump Sum Turn Key Integrated Project Management Contract for Drilling 13 UGS Wells (10 New Exploitation Wells and 3 Observation Wells) & Associated Services Regarding Chiren Underground Gas Storage Expansion Project (the "LSTK Contract") numbered 000058 dated November 24th, 2023 signed between UGS Drilling Chiren DZZD, BULSTAT 180918644, Str. Damyanitsa 3-5, City of Sofia, Post Code 1619, Bulgaria ("Company") and MEADS-MAES USA Chiren Joint Venture Company, BULSTAT: 181043220, 3 Ogneborets St., City of Sofia, Post Code 1619, Bulgaria, (the "Contractor") about the execution of the Chiren UGS Expansion Project (the "Project"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings given to them in the LSTK Contract as applicable.

Contractor acknowledges receipt of the Company's Ref. (a) letter regarding Notice of Suspension of the Contract. We regret to inform you that we must reject the assertions made by the Company as being entirely without merit and factually inaccurate.

1. **Rejection of Allegations:** The assertions made by the Company that the Contractor is in default are baseless. We have already provided a detailed response to each of your claims in our previous correspondence, specifically in Ref.(c) and Ref.(d) letters. As stated therein, the Contractor has at all times complied with its contractual obligations and has not engaged in any conduct that could reasonably be considered a breach of contract.

2. **Notice of Suspension:** The Contractor officially notified you of the suspension of the project on 17 July 2024, as per our letter referenced in Ref.(b). This suspension was necessitated due to the Company's material breach of the LSTK Contract, which has yet to be rectified. The failure on the part of the Company to address its contractual breaches has rendered it impossible for the Company to continue operations without risking further legal and financial exposure.

3. **Failure to Resolve Disputes:** Despite our repeated invitations to resolve the ongoing disputes amicably and to continue with the project, we have observed a lack of any genuine intent on the part of the Company to engage in such resolution. It is evident that the Company



is attempting to evade its obligations under the Contract by issuing unfounded notices of suspension and default.

4. **Company's Breach of Contract:** For clarity, we reiterate that the Contractor is not in default. On the contrary, it is the Company that has materially breached the Contract, thus placing it in default. As such, the Contractor categorically rejects all allegations made by the Company as being entirely without foundation.

5. **Rejection of Notice of Suspension:** Given that the project was already in suspension due to the Company's breach of contract, the notice of suspension issued by the Company is both null and void and is hereby rejected. We view this notice as an attempt to delay proceedings or avoid fulfilling your contractual obligations.

In light of the above, we reserve all rights, remedies, and defences available to us under the Contract and at law. We strongly advise that the Company cease issuing baseless claims and engage in a constructive dialogue aimed at resolving the existing disputes.

Best Regards,
Günay Dil
Project Manager
MEADS-MAES USA CHIREN JOINT VENTURE COMPANY



| | |
|---|---|
| **Project Name** | : Chiren Underground Gas Storage Expansion Project |
| **Date** | : 14/08/2024 |
| **Letter No.** | : MMUCJV-DZZDUGSCD-LTR-0028 |
| **Attention to** | : UGS Drilling Chiren DZZD, BULSTAT 180918644 |
| | Str. Damyanitsa 3-5, City of Sofia, Post Code 1619, Bulgaria |
| **Subject** | : Request for Information of Any Contractual Change and/or Project Upgrade |
| **Reference** | : |

Dear MRS. MAYA PENCHAVA,

Dear MR. NIKOLAOS LIAPIS,

This letter has reference to the Lump Sum Turn Key Integrated Project Management Contract for Drilling 13 UGS Wells (10 New Exploitation Wells and 3 Observation Wells) & Associated Services Regarding Chiren Underground Gas Storage Expansion Project (the "LSTK Contract") numbered 000058 dated November 24th, 2023 signed between UGS Drilling Chiren DZZD, BULSTAT 180918644, Str. Damyanitsa 3-5, City of Sofia, Post Code 1619, Bulgaria ("Company") and MEADS-MAES USA Chiren Joint Venture Company, BULSTAT: 181043220, 3 Ogneborets St., City of Sofia, Post Code 1619, Bulgaria, (the "Contractor") in relation to the execution of the Chiren UGS Expansion Project (the "Project"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings given to them in the LSTK Contract as applicable.

Please note that Clause 3.2 of the LSTK Contract stipulates that the Contractor shall receive relief under the Contract to the extent that the Company receives corresponding relief from the Employer under the Main Contract, with the same rights, boundaries, and restrictions, particularly regarding time extensions, compensation, and payments, in accordance with the Back-to-Back Principle.

As per the terms outlined in the LSTK, particularly in reference to the Back-to-Back Principle we kindly request to be promptly informed of any developments that may lead to:

1. Any increase in the overall value of the Main Contract resulting from materials and/or design upgrade we have implemented.
2. Any design upgrade that may affect the Scope of Work or material requirements,
3. Any changes or upgrades in the material acceptance criteria that may have an impact on the contractual entitlements of the Contractor.

We would like to remind one more time that our company is entitled to receive relief under the same conditions and boundaries as those provided to you by the Employer. Therefore, above information is essential to ensure that all parties remain aligned and that we can appropriately manage our responsibilities and rights in accordance with the Back-to-Back Principle under the LSTK Contract.

We kindly request that you provide the relevant information at your earliest convenience.

Best Regards,

Günay Dil

Project Manager

MEADS-MAES USA CHIREN JOINT VENTURE COMPANY



**Project Name**    : Chiren Underground Gas Storage Expansion Project
**Date**    : 30/07/2024
**Letter No.**    : MMUCJV-DZZDUGSCD-LTR-0026
**Attention to**    : UGS Drilling Chiren DZZD, BULSTAT 180918644
    Str. Damyanitsa 3-5, City of Sofia, Post Code 1619, Bulgaria
**Subject**    : Notice of Overdue Payment and Initiation of 10-Day Notice Period
**Reference**    : a) Company Letter dated 17.07.2024 numbered ПГИ3000141

Dear MRS. MAYA PENCHAVA,
Dear MR. NIKOLAOS LIAPIS,

This letter has reference to the Lump Sum Turn Key Integrated Project Management Contract for Drilling 13 UGS Wells (10 New Exploitation Wells and 3 Observation Wells) & Associated Services Regarding Chiren Underground Gas Storage Expansion Project (the "LSTK Contract") numbered 000058 dated November 24th, 2023 signed between UGS Drilling Chiren DZZD, BULSTAT 180918644, Str. Damyanitsa 3-5, City of Sofia, Post Code 1619, Bulgaria ("Company") and MEADS-MAES USA Chiren Joint Venture Company, BULSTAT: 181043220, 3 Ogneborets St., City of Sofia, Post Code 1619, Bulgaria, (the "Contractor") in relation to the execution of the Chiren UGS Expansion Project (the "Project"). Unless otherwise defined herein, capitalized terms used herein shall have the meanings given to them in the LSTK Contract as applicable.

Contractor acknowledges receipt of the Company's Ref. (a) letter regarding the proposal for a partial Call-out. Contractor clearly rejects any and all allegations in this letter but the proposal of partial call out for the first two Wells o-2 & E-83 to start drilling Works as well. Please note that the LSTK Contract is structured on a fixed-price basis for the execution of the entire Project, and explicitly requires the Contractor to deliver the entire Work as a whole. The proposal by the Company is inconsistent with the terms and conditions stipulated in the LSTK Contract. Accepting a partial call out would fragment the Project, undermining the integrated and comprehensive nature of the Contract. This would potentially introduce logistical complexities, increased costs, and coordination challenges that are not accounted for in the agreed lump sum price.

On the other hand, pursuant to Clause 18.10 of the LSTK Contract, upon the timely and duly completion of the mobilization of the Drilling Rigs and all necessary equipment and materials, which must be completed no less than 40 days prior to the first Well spud date, the Contractor is required to invoice 20% of the contractual price for 12 Wells, amounting to 11,963,077.00 EUR (Eleven million nine hundred sixty-three thousand seventy-seven Euros).

Pursuant to the Clause 18.5 of the LSTK Contract, the Company shall promptly notify the Contractor of any such disputed amount within 3 days from the receipt of the invoice accompanying with a copy of invoice to Contractor advising the reasons.

Additionally, pursuant to Clause 18.4 of the LSTK Contract, in the event of any delay in payment by the Company, the Contractor shall first notify the Company of the delay and the amount due. If the Company, after ten (10) days from the receipt of such notification, has not made the relevant payment without valid reason or justification, the Contractor shall be entitled to receive the due amount plus interest at the LIBOR rate, accruing from the end of the ten (10)-day notice period.



In this respect, it seems appropriate to devote some attention to the following matter of facts:

§   The Contractor has timely and duly completed the mobilization of the Drilling Rigs and all necessary equipment and materials required for the Drilling of the Wells, as stipulated in Clause 18.10 of the LSTK Contract.

§   The invoice numbered 0000000004 and dated 16/07/2024 amounting to 37,683,692.40- EUR (including VAT) was officially served as an attachment to our email dated 17/07/2024. The invoice amount comprised to 20% of the contractual price in an amount of 11,963,077.00 EUR plus the Advance Payment amount equivalent to 19,440,000 EUR, which had previously been paid.

§   Since the Contractor has not received any notice of dispute within three (3) days after receipt, as per Clause 18.5, the Company is presumed to have no objections and is obliged to pay the invoiced amount.

§   As of the date of this Letter, the Contractor has not received the 20 % (twenty percent) of the price for 12 (twelve) Wells, a sum of 11,963,077.00- EURO (Eleven million nine hundred sixty-three thousand seventy-seven EUROs). This amount has become outstanding.

In the light of the LSTK Contract and the mentioned clear facts, we hereby formally notify you of this delay and the due amount.

Should the Company fail to make the relevant payment within ten (10) days from the receipt of this notification, without any valid reason or justification, the Contractor will be entitled to receive the due amount plus interest at the LIBOR rate, accruing from the end of the ten (10)-day notice period.

Without prejudice to the Contractor's right to recover loss and/or damages under the Clause 20.2 and 20.8 of the LSTK Contract, you are requested to ensure that the outstanding payment is made within the specified timeframe to avoid the accrual of additional interest and any further contractual or legal actions.

Günay Dil
Project Manager
MEADS-MAES USA CHIREN JOINT VENTURE COMPANY



| | |
|---|---|
| **Project Name** | : Chiren Underground Gas Storage Expansion Project |
| **Date** | : 30/07/2024 |
| **Letter No.** | : MMUCJV-DZZDUGSCD-LTR-0025 |
| **Attention to** | : UGS Drilling Chiren DZZD, BULSTAT 180918644 |
| | Str. Damyanitsa 3-5, City of Sofia, Post Code 1619, Bulgaria |
| **Subject** | : Contractor Response to equipment certification & documentation review |
| **Reference** | : a) Company Letter dated 25.07.2024 numbered ПГИ3000150 |

Dear MRS. MAYA PENCHAVA,

Dear MR. NIKOLAOS LIAPIS,

This letter has reference to the Lump Sum Turn Key Integrated Project Management Contract for Drilling 13 UGS Wells (10 New Exploitation Wells and 3 Observation Wells) & Associated Services Regarding Chiren Underground Gas Storage Expansion Project (the "LSTK Contract")  numbered 000058 dated November 24th, 2023 signed between UGS Drilling Chiren DZZD, BULSTAT 180918644, Str. Damyanitsa 3-5, City of Sofia, Post Code 1619, Bulgaria ("Company") and MEADS-MAES USA Chiren Joint Venture Company, BULSTAT: 181043220,  3 Ogneborets St., City of Sofia, Post Code 1619, Bulgaria, ("Contractor") in relation to the execution of the Chiren Underground Gas Storage Expansion Project ("Project") under the main contract signed between Bulgartransgaz EAD ("Employer") and the Company.

The Contractor acknowledges receipt of Company Ref.(a) letter regarding equipment certification and documentation review. We would like to underline that as it is communicated with you by official letters sent by MMUCJV Project Manager with (MMUCJV-DZZDUGSCD-LTR-0023) and by Legal Correspondence sent by Colin Lambertus (EMLAW) we have suspended all communications with GBS and DZZD UGS Drilling Chiren until the disputes due to your breach of contract has been resolved. Until today we have not received any proposal or communication towards the resolution of the disputes. Due to the above reasons your subject letter is rejected.

Even though we have supplied all the necessary documentation for all the equipment and materials which will be used for the project (All 13 wells), we see that you are trying to manipulate the situation by finding artificial defaults to find excuses to delay payments you need to make according to contract. Lastly, we would like to highlight some points given below:

- All the required Materials and Equipment for all 13 wells are delivered to the field,
- All the required documentation has been submitted and already delivered to you (Please see Att 1- Handover of Documents-16.07.2024),
- For Halliburton Equipment please see the "Att 2- Halliburton Letter" which has been sent to you by Halliburton Europe Management refer to Mr. Kalin Peshov,
- Att 3- MMUCJV Vratsa Base Inventory 25 July 2024
- We noticed that the person who evaluated the documentation is not a subject matter expert for Oil & Gas Equipment.
- We believe that you have all the necessary documentation and after the dispute between Parties is resolved, our technical team should explain and justify to you and to BTG if necessary

We would like to express the contractor's willingness to fulfil the project works quickly afterwards resolving the dispute between the parties.

Günay Dil

Project Manager

MEADS-MAES USA CHIREN JOINT VENTURE COMPANY



**Attachment(s):**

1- Att 1 – Equipment Certification and Documents For Preliminary Review Handover Protocol
2- Att 2 – Halliburton Letter dated 21 July 2024.
3- Att 3 – MMUCJV Vratsa Base Inventory 25 July 2024



August 20, 2024

Ismet,

Attached please find materials received by the Bank yesterday. We have reviewed them, and they comply with the Advance Payment Refund Guarantee dated June 10, 2024. They have provided "all necessary document to identify the breach or failure to observe the terms of the Contract."

As such, we will be forwarding the $7,000,000 at the close of business on August 21, 2024, unless we receive confirmation from UniCredit Bulbank that the demand is rescinded and the breaches are cured.

Please do not contact us with regard to this, all of your communications should be with UGS Drilling Chiren DZZD to cure the breaches. Our obligations are clear under the Advance Payment Refund Guarantee.

Sincerely,

Paul A Reynolds
President

VIRGINIA, IL
217-452-3041

PETERSBURG, IL
217-632-2247

HAVANA, IL
309-543-6454

JACKSONVILLE, IL
217-243-9505

WWW.PETEFISHSKILES.COM