IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| PETEFISH, SKILES & CO., an Illinois Banking Association, </br>     Interpleader-Plaintiff, </br></br> v. </br></br> MEADS-MAES USA CHIREN JOINT VENTURE COMPANY and UGS DRILLING CHIREN DZZD, </br>     Interpleader-Defendants. | Case No. 24-cv-3250 |

OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court are Interpleader-Defendant Meads-Maes USA Chiren Joint Venture Company's Motion to Stay Pending Arbitration (Doc. 8) and Interpleader-Defendant UGS Drilling Chiren DZZD's Motion for Judgment on the Pleadings (Doc. 17).

I.  INTRODUCTION

Plaintiff Petefish, Skiles & Co. ("Petefish") is an Illinois Banking Association holding $7,000,000 in escrow for Defendant Meads-Maes USA Chiren Joint Venture Company ("Meads-Maes") or Defendant UGS Drilling Chiren DZZD ("UGS"). (Doc. 1, ¶ 1). The escrowed funds are part of an Advance Payment Bank Guarantee issued by Petefish in relation to a Bulgarian natural gas construction project that is a source of dispute between the two Defendants. (*Id.*) While UGS has demanded payment, Meads-Maes says UGS has acted in bad faith and is not entitled to payment. (*Id.*) In filing its Complaint for Interpleader, Petefish asks the Court to determine which Defendant is correct. (*Id.* at ¶ 2).

## II.  FACTUAL BACKGROUND

Petefish alleges UGS in 2023 was awarded a contract ("main contract") to facilitate the Underground Gas Storage Expansion Project by a Bulgarian contracting authority, Bulgartransgaz EAD. (*Id.* at ¶ 10). The main contract provided that UGS was to facilitate construction of above and below-ground gas storage facilities and gas transfer infrastructure located in Chiren, Bulgaria. (*Id.* at ¶ 11).

On or around November 24, 2023, the two Defendants entered into a Lump Sum Turn Key Integrated Project Management Contract ("subcontract") wherein Meads-Maes and UGS would drill 13 underground gas storage wells (ten exploitation wells and three observational wells) and provide other ancillary services as part of the project. (*Id.* at ¶ 12). Under section 18.9 of the subcontract, 30% of the total contract price, or $21,000,000, was to be paid as an advance payment to Meads-Maes. (*Id.* at ¶ 13). A condition of the advance payment required that Meads-Maes provide an unconditional advance payment bank guarantee to UGS, to be procured through Petefish. Petefish was to effectively hold the advance payment in escrow on behalf of Defendants. (*Id.* at ¶ 14). The subcontract has a Governing Law and Dispute Resolution clause that requires Defendants to attempt to resolve any dispute arising under the agreement amicably and in good faith. If that does not occur, the subcontract requires Defendants to submit the dispute to the London Court of International Arbitration in London, England. (*Id.* at ¶ 15). After the subcontract was executed, UGS made the advance payment to Petefish, Petefish issued the Unconditional Advance Payment Bank Guarantee to UGS and Meads-Maes began to perform its obligations under the subcontract. (*Id.* at ¶ 16).

On or around November 27, 2023, Petefish issued an Advanced Payment Refund Guarantee Letter to Meads-Maes and UGS under section 18.9 of the subcontract and confirmed it had received the $21,000,000 advance payment from UGS. Under the original letter, UGS was the beneficiary of the guarantee. (*Id.* at ¶ 17). The letter stated that any payments approved by UGS were to be made by Petefish to Meads-Maes and would reduce the advance payment being held by Petefish for the remaining period of the letter's validity which was originally set to expire on April 30, 2024. (*Id.* at ¶ 18).

On or around June 10, 2024, Petefish issued a superseding Advance Payment Refund Guarantee Letter ("the guarantee") to Meads-Maes and UGS. The guarantee reduced the Advanced Payment Refund Guarantee to $7,000,000 since payments had been approved by UGS and made to Meads-Maes for work under the subcontract. UGS remained the beneficiary of the guarantee. The guarantee provided for an expiration date of September 8, 2024. (*Id.* at ¶ 19). Petefish stated in the guarantee that it "hereby issue[s] to [UGS's] benefit this Guarantee . . . and irrevocably and unconditional[ly] undertake[s] to pay to you any amount (or, possibly, any portion thereof) up to and not to exceed US$'s 7,000,000.00 . . . with no objections on your first written demand signed by an authorized representative." (*Id.* at ¶ 20).

On or around August 15, 2024, UGS submitted a demand to Petefish for the full payment of the guarantee amount. (*Id.* at ¶ 21). The demand included a written statement outlining Meads-Maes' breached the subcontract by failing to supply all goods and materials in conformity with the terms of the subcontract and by failing to perform the work in a due and timely manner. (*Id.* at ¶ 22). The statement of breach alleged Meads-

Maes "has two major obligations under the [subcontract] that should have been fulfilled within strict deadlines prior to the beginning of the Drilling Works, and which have been secured through the Bank Guarantee," including (1) the preparation of well designs and drilling program within 45 days after the technical specifications were approved by the employer under the subcontract, the term of which expired on February 7, 2024; and (2) delivery of all deliverables (materials and equipment necessary for the wells) in accordance with approved technical specifications and well designs/drilling program accompanied by applicable documents and certifications proving their fitness for use. (*Id.* at ¶ 23). The demand included six letters written by UGS or Hill International that had been sent to Meads-Maes between June 5 and August 1, 2024. (*Id.* at ¶ 24).

Petefish notified Meads-Maes of UGS's demand and provided UGS a copy of the demand on or around August 20, 2024. (*Id.* at ¶ 25). In that correspondence, Petefish stated UGS had provided "all necessary document[s] to identify the breach or failure to observe the terms of the [subcontract]" pursuant to the guarantee and explained that it would "be forwarding the []$7,000,000 at the close of business on August 21, 2024" unless Petefish received confirmation that the demand was rescinded or the breaches were cured. (*Id.* at ¶ 26). In a letter to Petefish dated August 23, 2024, Meads-Maes disputed breaching the subcontract and explained its position that UGS's demand did not include documentation sufficient to establish any breach. (*Id.* at ¶ 28). Meads-Maes provided further documentation to Petefish in support of its' position and requested that Petefish not issue any payment to UGS until the close of business on September 5, 2024, so that Defendants could attempt a resolution. (*Id.* at ¶ 29). Defendants did not reach a resolution

and asserted conflicting claims to the guarantee funds. (*Id.* at ¶ 30). Petefish filed this action to determine which Defendant, if any, is entitled to the guarantee funds, which are held in escrow by Petefish. (*Id.* at ¶¶ 31-33).

## III. DISCUSSION

### A. Motion for Judgment on the Pleadings

UGS moves for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) states, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion may be used "to dispose of the case on the basis of the underlying substantive merits." *Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 518 (7th Cir. 2025). A Rule 12(c) motion is also a vehicle for a defendant to raise several of the defenses enumerated in Rule 12(b)—including a failure to state a claim upon which relief can be granted—after the close of the pleadings. *Id.* (citing Fed. R. Civ. P. 12(h)(2)(B). The Rule 12(b)(6) standard is used when a defendant files a motion under Rule 12(c). *Id.* at 518-19. That means the factual allegations in the complaint are accepted as true and must "raise a right to relief above the speculation level" for the suit to continue. *Id.* at 519. A court considers the pleadings and any exhibits attached thereto in applying the legal standard. *Id.*

UGS argues it is entitled to immediate payment of the $7 million held by Petefish because the demand guarantee is independent of the underlying relationship and the guarantor, Petefish, must pay the amount demanded by UGS without examining the facts to determine whether Meads-Maes in fact committed the alleged breaches identified by UGS. Once Petefish determined UGS's demand complied with the Uniform Rules for

Demand Guarantees, it became obligated to pay. Under Article 19(a) of the Uniform Rules, Petefish has the sole authority to determine whether the demand complies with the demand guarantee. UGS further contends that, to the extent Meads-Maes seeks a merits determination of whether it in fact breached the subcontract, it may do so in the appropriate forum—the London Court of International Arbitration—under the terms of the subcontract itself.

Meads-Maes contends the motion for judgment on the pleadings must be denied for the following reasons: (1) the pleadings are not closed; (2) there are disputed issues of material fact; (3) even if the guarantee is unambiguous, UGS failed to strictly comply and provide all documents and information supporting the purported breaches; (4) the demand failed to comply with the Uniform Rules for Demand Guarantees because it is internally contradictory; and (5) the equities and public policy favor caution and denial of the motion.

"Under Rule 12(c), a party can move for judgment on the pleadings after the filing of the complaint and answer." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). "After the pleadings are closed—and not before—a party may move for judgment on the pleadings." *United States v. Salem*, 2019 WL 6497381, at *2 (N.D. Ill. Dec. 3, 2019) (citing Fed. R. Civ. P. 12(c); James Wm. Moore, Moore's Federal Practice § 12.38 (3d ed. 2019) ("If the pleadings have not closed because the defendant has failed to answer, the plaintiff's remedy is not a judgment on the pleadings. The proper motion in that situation is a motion for judgment of default under Rule 55."); 5C Arthur R. Miller, Fed. Prac. & Proc.

Civ. § 1367 (3d ed. 2019) ("[T]he plaintiff cannot move under Rule 12(c) until after an answer has been filed.").

Meads-Maes alleges the pleadings are not closed because it has not filed an answer or affirmative defenses, instead moving to stay this action pending resolution of the arbitration between UGS and Meads-Maes. Meads-Maes claims granting the motion for judgment on the pleadings would result in prejudice because it would be deprived of the opportunity to assert affirmative defenses like fraud.

UGS contends Meads-Maes has failed to timely answer the complaint and may not use that failure to preclude judgment on the pleadings. Meads-Maes waived service so its responsive pleading was due 60 days later on November 11, 2024. *See* Fed. R. Civ. P. 4(d)(3). On November 8, 2024, Meads-Maes instead moved to stay this action pending arbitration. UGS asserts a motion to stay is not self-executing and thus is not effective until granted. Thus, Meads-Maes cannot grant itself an authorized extension by filing a stay motion at the eleventh hour. UGS argues its Rule 12(c) motion that was filed the day after the pleadings effectively closed on November 11 was timely.

Federal Rule of Civil Procedure 12(a)(4) provides that the filing of a motion under "this rule" alters the deadline for filing an answer to the extent that the responsive pleading must be filed "within 14 days after notice of the court's action." Fed. R. Civ. P. 12(a)(4). Motions to stay arbitration are not among the motions enumerated under Rule 12. UGS notes that few courts have considered whether Rule 12(a)(4)'s extension of time for filing a responsive pleading applies to a motion to stay pending arbitration. Given that motions to stay arbitration are not listed among those that alter the deadlines, Meads-

Maes should perhaps have filed a motion to extend the deadline for filing an answer. One federal appellate court has assumed that a motion to stay pending arbitration does extend the time for filing a responsive pleading until the motion is decided. *See HC Dalmoreproduct v. Kogan*, 145 F.3d 1338, 1998 WL 231108, at *1 (9th Cir. 1998) ("We assume without deciding, that, although his motion for stay pending arbitration is not in the list of defenses that may be made by motion at 12(b), nevertheless, it is treated the same way, for purposes of delaying the need to file an answer.") (citing Wright & Miller § 1360, pp. 432, 439-441 (motion for a stay pending arbitration may be treated as a Rule 12(b) motion)); *see also Buckley v. Gallo Sales Co.*, 949 F. Supp. 737, 739 (N.D. Cal. 1996) (construing a motion to stay pending arbitration as a Rule 12(b)(1) motion to dismiss); *see also Evans v. Hudson Coal Co.*, 165 F.2d 970, 972-73 (3d Cir. 1948) (construing an application for a stay pending arbitration as a Rule 12(b)(1) motion to dismiss).

The Court agrees with the limited authority that holds filing a motion to stay pending arbitration extends the time for filing a responsive pleading until the motion to stay is decided. Therefore, the November 11, 2024 deadline for Meads-Maes to file an answer was altered by filing the motion to stay. Because the pleadings have not closed, UGS's motion for judgment on the pleadings is premature. If UGS believes Meads-Maes failed to answer and the time for filing an answer has expired, UGS should have filed a motion for entry of default. *See e.g.*, James Wm. Moore, Moore's Federal Practice § 12.38 (3d. Ed. 2019). Therefore, the Motion for Judgment on the Pleadings is denied without prejudice.

### B. Motion to Stay Pending Arbitration

Meads-Maes moves to stay this action pending the arbitration that has been initiated. The issue in this case is whether the $7 million demand that UGS made to Petefish complies with the terms of the June 10, 2024, Advance Payment Refund Guarantee, which provides in part: "This Guarantee shall be subject to the laws of the United States and to the Uniform Rules for Demand Guarantees . . . . Any disputes arising thereunder shall be subject to the sole jurisdiction of the competent courts of [the] United States and venue shall be based in the Central District of Illinois." (Doc. 1-2 at 2). Because the guarantee is not before the arbitration tribunal, the Motion to Stay Pending Arbitration is DENIED.

### IV. CONCLUSION

For the reasons stated herein, Defendant Meads-Maes USA Chiren Joint Venture Co.'s Motion to Stay Pending Arbitration (Doc. 8) is DENIED. Defendant UGS Drilling Chiren DZZD's Motion for Judgment on Pleadings (Doc. 17) is DENIED without prejudice. Defendant Meads-Maes shall file its responsive pleading within 14 days of the entry of this Order.

ENTER: September 26, 2025

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE